830 So.2d 1025 (2002)
James L. FORTENBERRY
v.
C.R. BARD, INC.
No. 2001-CA-2195.
Court of Appeal of Louisiana, Fourth Circuit.
October 16, 2002.
*1027 Randall A. Smith, Andrew L. Kramer, Smith & Fawer, L.L.P., New Orleans, LA, Counsel for Plaintiff/Appellant.
Kenneth B. Krobert, Borrello & Dubuclet, Metairie, LA, Counsel for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge DAVID S. GORBATY).
Judge DENNIS R. BAGNERIS, SR.
In this workers' compensation case, the defendant-appellant, C.R. Bard, Inc. ("Bard"), and claimant, Stephanie Phillips (Ms. Phillips),[1] appeal the judgment of the Office of Workers' Compensation, which held that: (1) Mr. James Fortenberry ("Mr.Fortenberry") was in the course and scope of his employment at the time of his death; (2) his family was entitled workers' compensation benefits; and (3) Bard was entitled to a credit of $278,364.70 due to claimant's failure to obtain written approval from Bard to settle with General Motors Corporation ("GM"). For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
On September 24, 1999, at approximately 7:20 p.m., Mr. Fortenberry died when his car struck a guardrail and caught fire while he drove westbound on 1-10. At the time of the accident, Mr. Fortenberry worked out of his home office as a National Accounts Manager for Bard. In connection with Mr. Fortenberry's employment, Bard issued a 1999 Buick Regal automobile to Mr. Fortenberry for his personal and professional use.
On the morning of the accident, Mr. Fortenberry attended a regularly scheduled doctor's appointment. He then went to his office in his family home, which was located at 389 Broadway in New Orleans. Mr. Fortenberry was able to use the office in his home, although the rest of the home was unoccupied because it was being renovated. His family was living temporarily in an apartment in River Ridge. At approximately 4:15 p.m., Mr. Fortenberry left the Broadway residence and drove to Rae-Ben International, a hair and nail salon located in the Bucktown area of Jefferson Parish, where he had a haircut, manicure, and pedicure.
Mr. Fortenberry's accident occurred as he was on his way home from Rae-Ben International. No one is sure why Mr. Fortenberry remained on 1-10 well after *1028 passing exists that he could have taken for River Ridge. His office materials showed no meetings on that day other than the doctor's appointment in the morning.
On November 12, 1999, Ms. Phillips filed a federal lawsuit against GM that alleged a defect in the Buick leased by Bard for Mr. Fortenberry. The trial against GM began on September 25, 2000. On that same date, Ms. Phillips filed a workers' compensation claim against Bard. On September 29, 2000, the jury returned a verdict against GM, and in favor of Ms. Phillips, in the amount of $800,000.00. On October 3, 2000, Bard was informed of the jury verdict against GM. On October 24, 2000, the federal court entered a 60-day Order of Dismissal retaining jurisdiction to enforce a settlement between Ms. Phillips and GM. On November 8, 2000, GM paid its settlement proceeds to Ms. Phillips.
The workers' compensation case was tried on June 7, 2001, and the hearing officer rendered a judgment on July 12, 2001. The hearing officer held the following:
1. James Fortenberry was within the course and scope of employment with C.R. Bard, Inc. when he died on September 24, 1999; and
2. At the time of his death, James Fortenberry earned an annual salary of $150,000.00 (One Hundred and Fifty Thousand Dollars) from defendant; and
3. Defendant was not arbitrary and capricious for failing to timely pay this claim; and
4. Claimant, Stephanie Ann Phillips and the two minor dependent children Phoebie (8/8/96) and Avery (11/20/97) are entitled to the workers' compensation burial benefits in La. R.S. 23:1210 (maximum $5,000.00) and the death benefits in La. R.S. 23:1232(3); and
5. Claimant failed to get defendant's written approval of the settlement of the federal third party against General Motors, # 99-03423, USCD, Eastern District of Louisiana. The death benefits under La. R.S. 23:1232 are subject to the statutory cap. (Citations omitted). The maximum weekly workers' compensation rate for the accident is $384.00 (Three Hundred & Eighty Four Dollars); and
6. For claimant's failure to obtain written approval of the federal third party action against General Motors, [d]efendant is entitled to a dollar for dollar credit, subject to a maximum credit of 50% (Fifty percent) under La. R.S. 23:1102B, which credit totals $278,365.70 (Two Hundred Seventy Eight Thousand Three Hundred Sixty Four Dollars and Seventy Cents); and
7. Since defendant has not paid any workers' compensation indemnity benefits, no repayment to defendant is required only the credit due to defendant for its future obligations under workers' compensation.
On appeal, Bard contends that the hearing officer erred in finding that Mr. Fortenberry was acting in the course and scope of his employment at the time of his death and that the hearing officer was premature in limiting defendant's credit for the third-party settlement. Ms. Phillips appealed, arguing that the hearing officer erred in finding that: (1) claimant was required to obtain written approval from Bard for the third-party settlement; and (2) Bard was entitled to a credit up to a maximum of fifty percent (50%) of the settlement. Ms. Phillips further argues that the hearing officer erred when she failed to assess penalties against Bard, *1029 which refused to pay benefits following Mr. Fortenberry's death.
DISCUSSION
Issue One: Was Mr. Fortenberry within the course and scope of his employment at the time of the accident?
The issue of whether Mr. Fortenberry's injury occurred within the course and scope of his employment is a factual determination. Factual findings of a hearing officer may not be disturbed by an appellate court unless the factual findings are manifestly erroneous or clearly wrong. Hulbert v. Boh Bros., 99-1187, p. 4 (La.App. 4 Cir. 1/5/00), 751 So.2d 994, 997. In order for an appellate court to set aside a hearing officer's factual finding, the appellate court must conclude from the record, viewed in its entirety, that a reasonable factual basis did not exist for the hearing officers finding and that this finding is clearly wrong. Id. Thus, even though an appellate court may feel that its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.
According to the Louisiana's Workers' Compensation Act, "If any employee... receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation... to the person or persons hereinafter designated." La. R.S. 23:1031(A). The terms "in the course of "and "arising out of employment constitute a dual requirement. May v. Sisters of Charity of the Incarnate Word, 26,490, p. 3-4 (La.App. 2 Cir. 3/1/95), 651 So.2d 375, 378, writ denied, 95-0804 (La.5/5/95), 654 So.2d 329. The requirements are not viewed as separate and unrelated concepts; rather, there is a mutual interdependence of concepts in determining the relationship of the injury to the employment. Id.
An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during work hours, either on the employer's premises or at other places where employment activities take the employee. Mundy v. Department of Health and Human Resources, 593 So.2d 346, 349 (La.1992). The principal criteria for determining course of employment are time, place and employment activity. Id. For instance, for an employee who is paid for travel time to and from the work site, the daily employer/employee relationship does not terminate until the employee has reached his destination after the end of a workday. Michaleski v. Western Preferred Cas. Co., 472 So.2d 18, 20 (La.1985). Thus, an employee may be found to be actively engaged in the employer's business until he reaches his destination.
The determination of whether an accident arises out of employment focuses on the character or source of the risk that gives rise to the injury and on the relationship of the risk to the nature of the employment. Id. An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Id. An accident has also been held to arise out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred. Id. The principal objective of the "arising out of employment" requirement is to separate accidents attributable to employment risks, which form the basis of the employer's obligation under the compensation system, from accidents attributable to personal *1030 risks, for which the employer normally should not be responsible. Id.
As a general rule, an accident that occurs while an employee is traveling to and from work is not considered as having occurred during the course and scope of employment. May, 651 So.2d at 378. However, "where the employee is furnished a vehicle to drive to and from work, an accident is compensable which occurs on one of these trips provided the trip is reasonably contemplated by the contract of employment as being one which the employee would make in the interest of his employer's business." Boutte v. Mudd Separators, Inc., 236 So.2d 906, 908 (La.App. 3 Cir. 6/25/70).
In the hearing officer's reasons for judgment, she made the following factual determinations:
Fortenberry, an employee of defendant C.R. bard, Inc., maintained a home office for the benefit of his employer and drove a company car. Claimant worked days, nights, weekends and holidays at his home office and took his laptop around with him to do work. No one disputes this.
The deceased and his wife Dr. Stephanie A. Phillips were renovating a newly purchased home on Broadway Street in New Orleans, Louisiana and were residing in an apartment in River Ridge during the renovation.
On Friday, September 24, 1999, Fortenberry left his home office at the Broadway location, got a hair cut and stated that he was going home to the River Ridge location. Fortenberry was traveling in the company owned vehicle with his business laptop computer in the car, when his car burst into flame. Fortenberry died in that fire at about 7:20 p.m.
At the time of the fire, Fortenberry was back in the course and scope of his employment with defendant. At that time, Fortenberry was driving a company owned vehicle heading back home with the laptop computer in his car. If he had reached his home, he would presumably remove the laptop from the company car and secure it inside his River Ridge apartment. He would not have left the computer in the car.
At the time of the fire, Fortenberry was transporting the laptop computer in the back seat of the company owned vehicle. The business data in that computer was critical information and data of the defendant's company. Company names, contact names, phone numbers, etc. are all vital information for this type of business. If Fortenberry had been training someone to replace him, he certainly would have turned over at least that information. Fortenberry's personal errand of getting a hair cut had ended. Fortenberry was back in the course and scope of employment when he was transporting the laptop computer at the time of the fire and death, because, at his arrival at home, the first thing he would have done was to remove that computer.
At trial, Ms. Phillips, Ms. Tracy McDonald Cox, and Mr. James E. Fortenberry testified as to Mr. Fortenberry's work schedule, responsibilities, and relationship with Bard. The transcript of Mr. Joseph DeJohn, admitted during the trial, also gave insight into Mr. Fortenberry's work relationship with Bard.
Mr. Joseph DeJohn ("Mr.DeJohn"), an employee of C.R. Bard ("Bard"), testified in his deposition that Mr. Fortenberry, at the time of his accident, was a National Account Manager for Bard. He testified that Mr. Fortenberry's job required him to do a lot of driving, "plus a great deal of flight and overnights outside of the Louisiana *1031 area all over the country." Mr. DeJohn further testified that, from the very beginning of Mr. Fortenberry's employment with Bard, Mr. Fortenberry was given a company vehicle.
Ms. Phillips testified at trial that Bard provided Mr. Fortenberry with a 1999 Buick Regal, which he was driving at the time of the accident. She further testified, in pertinent part, as follows:
Q. And did Mr. Fortenberry have an office that he went to on a regular basis?
A. He worked out of his home. We had a home that we recently purchased.... It was being renovated and his office was already completed, and that's where he was working, and also he worked at home.
Q. At your home in River Ridge?
A. In River Ridge.
Q. Okay. And what kind of work would he do at home?
A. Everything.
Q. At your home in River Ridge?
A. He worked on his computer. He made phone calls. He did all of his work from home; so either location.
Q. Okay. He used a laptop computer at both locations?
A. Yes.
Q. Was the laptop computer in the car at the time that he died?
A. Yes. It was.
Q. Did he go directly to business meetings from your home in River Ridge at the time?
A. Yes.
Q. And did he also have to travel a fair amount for his job?
A. Yes. He traveled a lot.
Q. And would he use this company car to go on the road or to the airport if he had to fly somewhere?
A. Yes.

* * *
Q. And what was he doing that day [the day of the accident]?
A. He was working on a proposal for the following week, was finishing up a proposal that was due that week; and he was on the phone quite a lot.
Q. Okay. And when was the last time you spoke to him?
A. It was right about 4:00 in the evening.
Q. What was the substance of that conversation?
A. He told me that he was still working, and he had another phone call or two to make. Then he would be leaving there tohe had a haircut appointment, and he was going to be coming back after that to our apartment in River Ridge.

* * *
Q. Just one more question. Would he work at home on the weekends?
A. Yes. Often, almost every weekend.

* * *
Q. And what type of work would he do on Saturday and Sundays?
A. He worked on his computer. He made phone calls. He did the whole scope of his work.
Q. Did he have a standard nine to five job? Or was he, basically, on call all the time?
A. On call all the time.
Q. And as national accounts manager, he had to answer to whatever problems may come up in the field?
A. Yes.
Q. And would he get work calls on the weekends and at night?
*1032 A. Yes.
Ms. Tracy Cox, a friend of both Ms. Phillips and Mr. Fortenberry, testified at trial that she often observed Mr. Fortenberry working on the weekends. Specifically, she testified as follows:
Q. And what kind of work did you see him do?
A. He was always writing reports or making up proposals, making phone calls, getting phone calls, things like that.

* * *
Q. Did you notice if he also worked on the computer?
A. Yeah. He did all his proposals and things like that on the computer.
Mr. James Fortenberry, the father of the deceased, testified that, when he observed the Buick Regal following his son's accident, he could see the skeleton of the laptop computer in the back seat on the left-hand side. He further testified as follows:
Q. Okay. And were there also remnants of work papers that he had with him that day?
A. Stacks of manuals and an awful lot of Bard equipment that was in the trunk.
Q. And did you have experience to know whether he used that car all the time during the week, week nights, weekends for business related matters?
A. Yes. He did. His schedule was more than just eight hours.
Q. It was essentially on call?
A. Yes. In fact, if the doctor was operating, he could be called to assist the doctor.
Q. Okay. His expertise was in what medical technology area?
A. The heart, stents, filters. I believe that's what Bard makes.
Thus, the testimony supports the hearing officer's finding that Mr. Fortenberry often worked from home on weekends and nights, and that he was basically on call all of the time. The testimony further supports the hearing officer's finding that Mr. Fortenberry used his laptop computer to work on business proposals and reports, and that he had his laptop computer with him at the time of the accident.
In conclusion, we find that the testimony provides a reasonable factual basis for the hearing officer's finding that Mr. Fortenberry was in the course and scope of his employment at the time of his death. Accordingly, we affirm the hearing officer's finding that Mr. Fortenberry was in the course and scope of his employment with Bard when he died on September 24, 1999. Issue Two: Whether claimant was required to obtain written approval from Bard for the third-party settlement in federal court? If so, is Bard entitled to a credit up to a maximum of fifty percent under La. R.S. 23:1102B?
Ms. Phillips argues that the hearing officer erred in applying La. R.S. 23:1102 B, which controls situations where an employee fails to obtain written approval from an employer before compromising a claim with a third party. Specifically, Ms. Phillips argues that Bard is not entitled to any credit because it failed to intervene or take any action in the federal court lawsuit, and because Bard did not pay any compensation benefits to her after her husband's death. Bard, on the other hand, alleges that the hearing officer's judgment limiting its credit for the third-party settlement to 50% of the amount received in the third-party settlement was premature because Ms. Phillips had not expressed any intention to repay the compensation pursuant to La. R.S. 23:1102 B.
*1033 The issue to be addressed by this Court is whether the hearing officer correctly interpreted and applied La. R.S. 23:1102 B with regard to when an employee fails to obtain written approval from an employer before compromising a claim with a third party. The judgment states the following, in regard to La. R.S. 23:1102 B:
6. For claimant's failure to obtain written approval of the federal third party action against General Motors, [d]efendant is entitled to a dollar for dollar credit, subject to a maximum credit of 50% (Fifty percent) under La. R.S. 23:1102 B, which credit totals $278,365.70 (Two Hundred Seventy Eight Thousand Three Hundred Sixty Four Dollars and Seventy Cents); and
7. Since defendant has not paid any workers' compensation indemnity benefits, no repayment to defendant is required-only the credit due to defendant for its future obligations under workers' compensation.
For the reasons below, we find that the hearing officer incorrectly applied La. R.S. 23:1102 B when she found a credit of $278,365.70 due to Bard for its future obligations under workers' compensation.
La. R.S. 23:1102 B states as follows:
If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or the insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.
(Emphasis Added)
Contrary to the analyses put forth by the hearing officer, this statute differentiates between prior and future benefits and between notice of the suit and approval of a compromise, such differences being the determinant criterion of what benefits, as well as any limitations or credits related to such benefits, will ultimately inure to the claimant. In plain language, this statute bars receipt of workers' compensation benefits *1034 by an employee or his/her dependent when that party fails to either give notice of a third party suit to the employer or receive employer's/insurer's approval for a compromise related thereto. The next sentence then provides for an exception to this rule (as is indicated by the term "Notwithstanding") where the employee has failed to obtain approval for a third party compromise. As the previous sentence bars receipt of benefits upon either failure to give notice or to obtain approval, and the exception allowing for the conditional reservation of future benefits devolves only upon failure to obtain approval, application of this exception must contemplate that proper notice of the suit has been given to the employer.
Therefore, in a case where notice of the suit has been given but approval of a compromise has not been obtained, as is the instant case, the reservation of the right to future benefits is hinged on the repayment of previously paid workers' compensation benefits ("buy back provision") and the giving of a "dollar for dollar credit" equal to the full value of the compromise, with only the repayment of previously paid benefits being limited to 50% of the amount of the compromise. Nowhere in this statute is it stated that the "dollar for dollar credit" against future benefits shall not exceed 50% of the amount received in a third party compromise, and any such reading of this statute to that effect is clearly erroneous.
Based on the factual determination that Bard was given notice of Ms. Phillips' third party action,[2] we accordingly hold that Bard's failure to approve the compromise does not absolutely bar Ms. Phillips from receiving future benefits. Rather, Ms. Phillips' receipt of future benefits is predicated on the application of La. R.S. 23:1102B's exceptive language, which yields the following results:
1. The "buy back" provision contained in 23:1102 B, together with its 50% limitation on amounts to be recovered from a third party compromise, is applicable only to recovery of previously paid workers' compensation benefits. Analysis of this provision relating to Ms. Phillips or Bard is pretermitted by the fact that no such benefits payments were ever paid to Ms. Phillips.
2. Ms. Phillips is entitled to future workers' compensation benefits, but Bard is entitled to a dollar for dollar credit against such future benefits equal to the full amount of the compromise received by Ms. Phillips, less attorney fees incurred in the prosecuting the matter. We emphasize that the 50% limitation on the repayment of previously paid benefits is not applicable to the dollar for dollar" credit against which Bard's payment of future benefits shall be reduced.
Issue Three: Whether the hearing officer erred when she failed to assess penalties against Bard under La. R.S. 23:1201?
A hearing officer's decision as to whether to award penalties and attorney's fees under La. R.S. 23:1201 is a factual determination and should not be disturbed on appeal unless clearly wrong. Lemoine v. Schwegmann Giant Supermarkets, Inc., 607 So.2d 708, 712 (La.App. 4 Cir.10/15/92), writ denied, 609 So.2d 258 (La.1992). La. R.S. 23:1201 states, in pertinent part:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and *1035 place as wages were payable to the employee before the accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom, such payments shall be made by mail, upon the employee giving to the employer a sufficient mailing address. However, a longer interval, not to exceed one month, may be substituted by agreement without approval of the director. An interval of more than one month must be approved by the director.
B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid.

* * *
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
In Brown v. Texas-LA Cartage, Inc., the Louisiana Supreme Court held that statutory penalties and attorney's fees shall be awarded if the employer or insurer fails to timely pay benefits due claimant pursuant to La. R.S. 23:1201 unless: (1) the claim is reasonably controverted or (2) such nonpayment results from conditions over which the employer or insurer had no control. 98-1063, p. 8 (La.12/1/98), 721 So.2d 885, 889-890.
The burden of proving entitlement to a penalty is on claimant. Washington v. Lyons Specialty Co., 96-0263, p. 13 (La.App. 1 Cir. 11/8/96), 683 So.2d 367, 376, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408. Because La. R.S. 23:1201 is penal in nature, we are confined to a strict and narrow construction of it in determining whether an award of a penalty is appropriate. Id.
In this case, Ms. Phillips did not file her Disputed Claim for Compensation with the Office of Workers' Compensation until September 25, 2000, a year after the death of Mr. Fortenberry. Further, we find Bard reasonably controverted the claim for workers' compensation in its argument that Mr. Fortenberry was out of the course and scope of his employment at the time of his death. Accordingly, we cannot say that the hearing officer was manifestly erroneous or clearly wrong in denying Ms. Phillips penalties and attorney's fees.
For the reasons stated above, we affirm the hearing officer's finding that Mr. James Fortenberry was in the course and scope of his employment at the time of his *1036 death, and we reverse the hearing officer's finding that Bard was entitled to a credit of $278,365.70 for its future obligations under workers' compensation. Rather, we find that Ms. Phillips is entitled to future workers' compensation benefits, but that Bard is entitled to a dollar for dollar credit against such future benefits equal to the full amount of the compromise received by Ms. Phillips, less attorney fees incurred in prosecuting the matter.
AFFIRMED IN PART; REVERSED IN PART.
GORBATY, J., dissents in part with reasons.
GORBATY, J., dissents in part with reasons.
I respectfully dissent in part. Defendant contends that the trial judge erred in finding that the conduct Mr. Fortenberry at the time of his death arose out of and was in the course of his employment with Bard.
In her Reasons for Judgment in the instant case, the trial judge stated:
At the time of the fire, Fortenberry was transporting the laptop computer in the back seat of the company owned vehicle. The business data in that computer was critical information and data of the defendant's company. Company names, contact names, phone numbers, etc. are all vital information for this type of business. If Fortenberry had been training someone to replace him, he certainly would have turned over at least that information. Fortenberry's personal errand of getting a hair cut had ended. Fortenberry was back in the course and scope of employment when he was transporting the laptop computer at the time of the fire and death, because, at his arrival at home, the first thing he would have done was to remove that computer.
I cannot agree that the mere presence of the laptop computer in Mr. Fortenberry's car denotes that he was in the course and scope of his employment. The testimony that Mr. Fortenberry always had the laptop in his possession tends to render that fact useless in analyzing any specific behavior; plaintiff carried the laptop with him at all times, whether he was working or not. After reviewing all of the evidence and testimony, I find that the trip Mr. Fortenberry was makingfrom his hair salon to his homewas not "one which the employee would make in the interest of his employer's business," as required by Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3 Cir. 1970). He was returning home after getting a haircut. Mr. Fortenberry's visit to the salon was not in any way related to his employment; nor was his return home afterward. Mr. Fortenberry was not actively engaged in the performance of his duties during work hours, either on the employer's premises or at other places where employment activities take the employee, as required by Mundy v. Department of Health and Human Resources, 593 So.2d 346 (La.1992). This accident occurred after seven o'clock in the evening on a Friday, well past regular work hours, and the testimony unequivocally indicates that Mr. Fortenberry was not working at the time the accident occurred. Further, the accident did not occur at or near an employment-related destination, as also required by Mundy.
As the majority has stated, in an Incident and Accident Investigation Report, Bard stated that at the time the incident occurred, Mr. Fortenberry "was coming from a meeting in a company car." However, this statement is clearly erroneous. All of the testimony and evidence show that Mr. Fortenberry was not coming from *1037 a meeting, but rather was returning home after a hair appointment. The salon appointment was in no way related to a work meeting or conference.
Based upon the specific facts and circumstances of this case, I would decline to follow Folse v. American Well Control, 536 So.2d 686 (La.App. 3 Cir. 1988), as relied upon by plaintiff. I also feel that Keith v. Gelco Corporation, 30,022 (La.App. 2 Cir. 12/10/97), 705 So.2d 244, is distinguishable from the instant case, as it is factually dissimilar. Keith concerned plaintiffs who were injured in an accident while traveling to and from a job site in a company car being driven by their supervisor. Plaintiffs were paid travel time on the date of the accident. The court found that they were in the course and scope of their employment when the accident occurred. In the case sub judice, plaintiff was not being paid travel time when the accident occurred, nor was he traveling to or from a job site. Further, he was driving the car himself, and was not being driven by a co-employee.
Because I would find that Mr. Fortenberry was not acting in the course and scope of his employment, and is thus not entitled to workers' compensation benefits, I would pretermit discussion of the remaining assignments of error. However, the majority has found that Mr. Fortenberry was acting in the course and scope of his employment, and thus must address the additional assignments of error. I agree with their disposition of these issues, but once again point out that under my analysis, they need not be reached.
Accordingly, for the foregoing reasons, I respectfully dissent in part and would reverse the judgment of the trial court.
NOTES
[1] Ms. Phillips is the widow of James Fortenberry.
[2] It is evident from the record that Bard was given sufficient notice of the suit by way of discovery requests, subpoena's, and other filings contained in the record.