862 So.2d 1032 (2003)
Wade D. SCHINDLER
v.
ORLEANS REGIONAL SECURITY.
No. 2003-CA-0522.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 2003.
*1035 Joseph G. Albe, New Orleans, LA, for Plaintiff/Appellee Wade D. Schindler.
Jeffrey J. Warrens, Baton Rouge, LA, for Defendant/Appellant Regional Security Institute, Inc. and Louisiana Workers' Compensation Corporation.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The defendants, Orleans Regional Security Institute, Inc. (ORSI), and the Louisiana Workers' Compensation Corporation (LWCC), appeal from a judgment of the Office of Workers' Compensation awarding the plaintiff/claimant, Wade D. Schindler,[1] medical benefits, penalties, and attorney fees. Schindler has answered the appeal.

FACTUAL AND PROCEDURAL HISTORY
Schindler, the president and sole officer and employee of ORSI, was involved in an automobile accident on May 29, 1997. At the time, Schindler was a guest passenger in an Isuzu Trooper driven by Peggy Ogden, a client of ORSI. Ogden was traveling northbound on North Carrollton Avenue at the intersection of Esplanade Avenue when she suddenly swerved to avoid colliding with a vehicle driven by Lorraine Young, who had run the red light at Esplanade Avenue. The front of Young's vehicle struck the passenger side rear corner of Ogden's Isuzu, but the damage to the vehicles was very minimal. Nonetheless, as a result, Schindler was tossed about the vehicle and injured.
Schindler filed a disputed claim for compensation with the Office of Workers' Compensation on August 23, 2000[2], alleging that he was in the course and scope of his employment with ORSI at the time of the accident. He also alleged that he injured both his left shoulder and left eye and sought past medical expenses and expenses for future eye surgery. The LWCC received notice of the disputed claim on October 24, 2000, and filed its answer denying the claim on December 5, 2000.
At the three-day trial on the merits, the LWCC argued that Schindler was neither within the course and scope of his employment at the time of the accident nor sustained any injuries. Alternatively, it argued that in the event the workers' compensation judge found that Schindler was injured while within the course and scope of his employment, its liability for non-emergency medical expenses was limited to $750.00 per health care provider pursuant to La. R.S. 23:1142 B.
Following the trial, the workers' compensation judge concluded that Schindler was within the course and scope of his *1036 employment during the May 29, 1997 accident and injured his left eye and/or tear duct, but not his left shoulder. She rendered judgment in favor of Schindler and awarded him all reasonable and necessary medical expenses associated with his left eye injury, including future surgery, finding the $750.00 cap pursuant to La. R.S. 23:1142 B inapplicable because the LWCC denied the claim. The workers' compensation judge also awarded Schindler a penalty of $2,000.00 and attorney fees in the amount of $15,000.00, finding that the LWCC failed to pay the medical expenses related to the eye injury and did not reasonably controvert the eye injury claim.
After filing its appeal brief, the LWCC waived two of its five assignments of error, conceding that Schindler sustained an injury to his left eye in the May 29, 1997 accident while within the course and scope of his employment with ORSI. Thus, the LWCC asserts the following three assignments of error: 1) the workers' compensation judge failed to apply the $750.00 cap set forth in La. R.S. 23:1142 B to the medical expenses incurred by Schindler prior to the LWCC being notified of the claim; 2) the workers' compensation judge erred in concluding that the LWCC failed to reasonably controvert Schindler's claim and awarding him penalties and attorney fees; and 3) the workers' compensation judge erred in awarding excessive attorney fees. Schindler answers the appeal, arguing the workers' compensation judge erred in finding that the accident did not aggravate his pre-existing left shoulder injury, and seeks an increase in attorney fees.

STANDARD OF REVIEW
It is well settled that factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164; Banks v. Industrial Roofing & Sheet Metal Works, 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying the manifest errorclearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Seal, 97-0688 at p. 4, 704 So.2d at 1164. Where two permissible views of the evidence exist, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. Id. If the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, 96-2840 at p. 8, 696 So.2d at 556.

APPLICABLE LAW AND DISCUSSION
Left Shoulder Injury
At the outset, we address the issue of whether the workers' compensation judge erred in determining that the work-related accident did not aggravate Schindler's pre-existing left shoulder injury. Schindler contends that his testimony along with the deposition testimony of Ronald J. French, M.D., an orthopedic surgeon, which was introduced at trial, were sufficient to prove that the work-related accident aggravated his left shoulder injury.
An injured employee is entitled to receive benefits for an injury that arises out of and in the course and scope of his employment. La. R.S. 23:1031. The injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Quinones v. USF & G, 93-1648, p. *1037 6 (La. 1/14/94), 630 So.2d 1303, 1306-07. An employee's pre-existing condition does not disqualify his claim if the work related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Doucet v. Baker Hughes Production Tools, 93-3087, p. 3 (La.3/11/94), 635 So.2d 166, 167. An employee's disability will be presumed to have resulted from an employment accident if before the accident the plaintiff was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. Id.
The evidence in the record reflects that on April 10, 1997, Schindler had severe left shoulder pain and went to the Department of Veterans Affairs Medical Center (VA Hospital) where Rudolph Buckley, M.D., examined him. Schindler complained to Dr. Buckley that his left shoulder was "getting caught" when he raised his left elbow and that he had been experiencing an increase in pain over the last year. Dr. Buckley x-rayed the shoulder, which revealed a degenerative joint disease of the acromion (outer end of the shoulder blade). Possible diagnoses included shoulder impingement, a tear in the anterior part of the capsule of the shoulder and/or bursitis and/or a tear in the rotator cuff. Schindler returned to the VA Hospital on May 13, 1997 with the same complaints. Dr. Buckley ordered a magnetic resonance imaging (MRI) test, but the procedure was aborted due to Schindler's complaint of claustrophobia. Dr. Buckley then noted that he wanted to schedule Schindler for diagnostic arthroscopy because he was unable to undergo the MRI. Schindler went to see Dr. Buckley again on June 3, 1997, five days after the car accident, but he never mentioned the accident nor complained of re-injuring his left shoulder. Dr. Buckley opined that Schindler, more likely than not, had torn his left rotator cuff prior to May 29, 1997, and as a result of degenerative changes, would have required a shaving of the end or tip of the shoulder blade even without any additional alleged trauma.
The following week, on June 11, 1997, Schindler went to see George R. Cary, Jr., M. D., an orthopedic surgeon, and gave him the following history, as reflected in Dr. Cary's notes:
The patient stated that while as a passenger in the front seat of an automobile, without a seat belt, his car was hit from the rear while moving. The patient was thrown in an oblique and transverse fashion about the passenger compartment striking his left shoulder on unknown objects and injuring his neck and back. The patient noted immediate dizziness, nausea and swelling in the region of the left eye.

* * *
Past history reveals limited motion of the left shoulder, secondary to an old injury with pain in the left shoulder hurting over a period of three years. The patient engages in water aerobics which has caused worsening of the condition and somewhat stiffening of the condition.
Shortly thereafter, Dr. Cary referred Schindler to his associate, Ronald J. French, M.D., an orthopedic surgeon who specialized in shoulder injuries. After examining Schindler on July 25, 1997, Dr. French opined that he had sustained a partial or complete tear of the rotator cuff at the time of the motor vehicle accident. A subsequent MRI test verified a tear of the rotator cuff. Schindler underwent arthroscopic surgery by Dr. French on *1038 December 23, 1997. Schindler recovered well from the surgery, but required several months of physical therapy.
As to the cause of Schindler's shoulder injury, Dr. French referred back to Schindler's medical records from the VA Hospital in which Dr. Buckley noted that Schindler had a positive impingement sign and some degeneration at the acromioclavicular (AC) joint, but had good rotator cuff strength. Dr. French concluded that these physical findings were consistent with degenerative arthritis of the shoulder and degeneration of the rotator cuff tendon, which would have predisposed Schindler to further injury. Dr. French opined that due to the weakened condition of Schindler's rotator cuff, a motor vehicle accident with relatively low impact could have caused the rotator cuff tear.
When questioned about the force necessary to aggravate Schindler's pre-existing left shoulder condition, Dr. French testified either a direct blow to the shoulder or some forced abduction of the shoulder would have been needed. He described the force as "[a]nything that either pushes the acromion down or pushes the rotator cuff up." Dr. French explained that had Schindler experienced such trauma to the shoulder sufficient to cause further tearing or a tear to an already inflamed tendon, he would have felt severe pain immediately, not days later.
At the request of State Farm Mutual Automobile Insurance Company, Timothy Finney, M. D., another orthopedic surgeon, examined Schindler in December 1997. Dr. Finney opined that Schindler's significant pre-existing left shoulder pathology and subjective complaints prior to May 1997 made it impossible to determine that the vehicular accident caused the left shoulder injury seen on the arthroscopy. Dr. Finney specifically noted the fact that Dr. Buckley wanted Schindler to undergo arthroscopic surgery at the VA Hospital prior to the May 1997 accident.
Notwithstanding Dr. French's deposition testimony and Schindler's testimony that he could no longer lift anything after the accident, Schindler admitted on cross-examination that the impact between the two vehicles was slight and he could not recall whether he struck his shoulder on anything during the accident. He also acknowledged that he experienced no left shoulder discomfort immediately after the accident and did not complain about an aggravation to his pre-existing shoulder injury until several weeks later.
The workers' compensation judge determined that Schindler did not satisfy his burden of proving that he injured or aggravated a pre-existing injury to his left shoulder. After considering the evidence in the record, we find Schindler did not prove by a preponderance of the evidence that he was in good health prior to the accident and commencing with the accident the disabling symptoms of his left shoulder appeared. To the contrary, the medical evidence clearly indicates that Schindler's left shoulder injury was causing him pain for more than a year prior to the accident, and based on his complaints, Dr. Buckley proceeded with diagnostic testing and intended to schedule arthroscopic surgery prior to the vehicular accident. In view of the medical evidence, as well as Schindler's own testimony that the vehicular impact was minimal and he felt no pain to his left shoulder immediately following the accident, we cannot say that the trial court erred in concluding that the accident did not cause an aggravation to his pre-existing left shoulder injury.
Medical Expenses
We now address the issue of whether the trial court erred in determining that the $750.00 limit set forth in La. *1039 R.S. 23:1142 B was not applicable to medical expenses incurred by Schindler prior to the LWCC being notified of the claim.
An employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. La. R.S. 23:1203 A. The right to reimbursement for medical expenses is separate and distinct from the right to compensation. Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 9 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, 19. Whether a claimant is entitled to medical benefits is a question of fact, and the fact finder's resolution of that issue may not be disturbed on appeal in the absence of manifest error or unless clearly wrong. Id.
To recover medical expenses under La. R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Montana v. City of New Orleans, 95-1701, p. 9 (La. App. 4 Cir. 6/5/96), 682 So.2d 239, 245, writ denied 96-2981 (La. 1/31/97), 687 So.2d 412. An injured employee is not entitled to recover for medical expenses where he or she fails to substantiate a claim. Starks v. Universal Life Insurance Company, 95-1003, p. 5 (La.App. 1 Cir. 12/15/95), 666 So.2d 387, 391, writ denied 96-0113 (La.3/8/96), 669 So.2d 400. Nonetheless, when a claimant alleges that he incurred medical expenses and a bill supports that allegation, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment. See Augustus v. St. Mary Parish School Board, 95-2498, p. 15 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1155.
On appeal, the LWCC does not contest the workers' compensation judge's finding that Schindler injured his left eye and/or tear duct in the accident. Rather, it argues that its liability for the nonemergency medical expenses related to the left eye injury incurred by Schindler prior to the date it received notice of the claim is limited to $750.00 per health care provider pursuant to La. R.S. 23:1142 B. Schindler counters that the $750.00 limit is not applicable because the LWCC denied the claim, citing the exception set forth in La. R.S. 23:1142 E.
La. R.S. 23:1142 provides, in part:
B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

* * *
E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
Under the exception set forth in La. R.S. 23:1142 E, when an employer or insurer has denied that a claimant's injury is compensable, the statutory cap does not apply. See Bolton v. Tulane University, *1040 99-0970, p. 9 (La.App. 4 Cir. 3/1/00), 755 So.2d 1003, 1009[3].
At trial, Schindler introduced into evidence his medical records and bills from Robert J. Cangelosi, Sr., M.D., of Greater New Orleans Eye Physicians, who treated his eye injury from the date of the accident through March 2000. He also submitted into evidence documentation from Tulane University Medical Center, indicating Peter R. Kastl, M.D., an ophthalmologist, and Kyle V. Acosta, M.D., an ophthalmic plastic and reconstructive surgeon, examined him in July 1999 and April 2000, respectively. In addition, Schindler introduced invoices and receipts for expenses incurred in replacing his eyeglasses and undergoing diagnostic tests related to his eye injury.
In finding that the $750.00 limit did not apply in this case, the workers' compensation judge noted in her reasons for judgment that Schindler did not file a disputed claim for compensation until years after the accident and, thus, did not seek prior authorization for medical treatment. Nonetheless, because the LWCC denied the claim after receiving notice of it, the judge presumed that it would have denied the claim had it received notice earlier. We find the workers' compensation judge's conclusion does not necessarily follow.
Recently, in Daniels v. Keller Supply, Inc., 2002-2767, p. 1 (La.App. 4 Cir. 8/6/03), 854 So.2d 416, we held that an employer's liability for medical expenses incurred by the claimant/employee prior to the employer's denial of the claim was limited to the $750.00 cap set forth in La. R.S. 23:1142 B. In that case, Daniels, an employee of Keller Supply, was injured in a work-related accident on October 5, 2000, and returned to work several weeks after the accident. Nearly a year later, after Daniels left Keller Supply and went to work for its competitor, he filed a disputed claim for compensation with the Office of Workers' Compensation on September 28, 2001, alleging that he injured his back in the October 5, 2000 accident and that Keller Supply failed to authorize medical treatment. Keller Supply received notice of the claim on December 20, 2001, and filed an answer on January 3, 2002, denying that Daniels sustained any injury or disability in the accident. Following trial, the workers' compensation judge awarded Daniels all medical expenses related to the injury. We disagreed and amended the judgment, in part, finding that Keller Supply was entitled to the statutory cap on liability for unapproved nonemergency medical treatment rendered to Daniels prior to January 3, 2002, the date it filed its answer denying the claim. We concluded that even though Keller Supply knew of the work-related accident and sent Daniels to its company physicians for treatment for pain following the accident, pursuant to La. R.S. 23:1142 B, Daniels' treating physician, Dr. Seltzer, could incur no more than a total of $750.00 in nonemergency diagnostic testing or treatment without the mutual consent of Keller Supply and Daniels. Because Dr. Seltzer did not receive prior approval from Keller Supply, its liability for medical expenses incurred prior to January 3, 2003, was limited to $750.00. Once Keller Supply denied the claim, however, Dr. Seltzer was not obligated to obtain its approval to treat Daniels, and Keller Supply was liable for the medical expenses incurred after January 3, 2002.
In the instant case, Schindler filed his disputed claim for compensation more *1041 than three years after the work-related accident. As a result, the LWCC was unaware that Schindler had injured his eye and was being treated by several ophthalmologists. During that three-year period, Schindler incurred thousands of dollars in medical expenses related to his eye injury. To cast the LWCC in judgment for the full amount of those medical expenses when it was never notified of the claim is unjust. Thus, following the holding in Daniels, supra, pursuant to La. R.S. 23:1142 B, the LWCC's liability for medical expenses for nonemergency diagnostic testing or treatment of Schindler's left eye injury that were incurred prior to December 5, 2000, is limited to $750.00 for each health care provider. The LWCC, however, is not entitled to the statutory cap on liability for any unapproved nonemergency medical treatment rendered after it denied the claim.
penalties and Attorney Fees
We next address whether the workers' compensation judge erred in awarding Schindler a penalty of $2,000.00 and $15,000.00 in attorney fees for the LWCC's refusal to pay medical benefits associated with the eye injury and its failure to reasonably controvert the eye injury claim pursuant to La. R.S. 23:1201 F(2).
A workers' compensation judge's award of penalties and attorney fees under La. R.S. 23:1201 is a factual determination and should not be disturbed on appeal unless clearly wrong. Fortenberry v. Bard, 2001-2195, p. 13 (La.App. 4 Cir. 10/16/02), 830 So.2d 1025, 1034, writ denied 2002-2797, 2002-2877 (La.2/14/03), 836 So.2d 119, 120.
La. R.S. 23:1201 E provides that medical benefits shall be paid within sixty days after the employer or insurer receives written notice thereof. Furthermore, the penalty provision, La. R.S. 23:1201 F, provides, in part:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:

* * *
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
La. R.S. 23:1201 F is penal in nature and, therefore, must be strictly construed. See Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. An award of attorney fees in a workers' compensation case is intended to discourage indifference and undesirable conduct by employers and insurers. Id. The burden of proving entitlement to a penalty is on the claimant. Fortenberry, 2001-2195 at p. 14, 830 So.2d at 1035.
The LWCC argues that the workers' compensation judge erred in concluding that it did not reasonably controvert Schindler's eye injury claim. It argues that Peggy Ogden, the driver of the vehicle in which Schindler was a passenger, gave statements to the insurance companies and testified in several depositions that Schindler was not thrown about the interior of the vehicle and did not sustain any injury in the accident. Ogden's testimony *1042 alone provided a sufficient basis to controvert the claim, the LWCC contends.
In assessing the penalty, the workers' compensation judge concluded that, initially, the LWCC was justified in denying the claim based on Ogden's testimony. Eventually, however, Ogden's credibility came into question. The workers' compensation judge noted in her reasons for judgment:
This OWC Court found one fact to [be] irrefutable. No matter what claimant said, defendant's main witness Peggy Ogden would almost swear upon her last breath that claimant was lying. Even when evidence was presented to Peggy Ogden that she was wrong, Peggy Ogden was eager to explain it away at trial. (However, getting the deposition of Peggy Ogden and her eventual trial testimony was a monumental event, which included a threat of contempt proceedings and Peggy Ogden eventually only appearing at trial with her private attorney present.)
Peggy Ogden was a pleasant person but not a credible witness.
Could the attorneys and adjuster [have] been convinced at the beginning of their involvement (albeit very late notice) of this workers' compensation claim that Peggy Ogden was a reliable witness? Yes. However, at some point in time, a bell should have been sounding off that their main witness had major credibility problems.
After reviewing the evidence in the record, we cannot say the workers' compensation judge erred in assessing a $2,000.00 penalty against the LWCC and awarding Schindler attorney fees for failing to reasonably controvert the claim. Ogden's initial statement to State Farm Mutual Automobile Insurance Company's adjuster shortly after the accident differed significantly from her later depositions and trial testimony. At one point she acknowledged that Schindler had told her shortly after the accident that he had injured his eye, then later denied it. She also contradicted herself on specific times, dates, and other facts regarding the accident. Ogden's inconsistent statements and equivocation at trial clearly support the workers' compensation judge's finding that Ogden was not a credible witness and the LWCC should not have relied on her testimony to reasonably controvert Schindler's claim.
Finally, the LWCC argues that the $15,000.00 award of attorney fees is excessive. Schindler, on the other hand, seeks an increase in the award. Although an award of $15,000.00 in attorney fees in a case such as this appears high, we cannot say that the workers' compensation judge was clearly wrong in making the award. Also, no basis exists in this appeal for increasing the attorney fees. Thus, we decline to disturb the award.

CONCLUSION
Accordingly, for the reasons stated herein, the judgment of the Office of Workers' Compensation is amended, in part, to reflect that pursuant to La. R.S. 23:1142 B, the LWCC's liability for medical expenses for nonemergency diagnostic testing or treatment of Schindler's left eye injury incurred prior to December 5, 2000, is limited to $750.00 for each health care provider. In all other respects the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Schindler, an adjunct professor of criminal justice at Tulane University and a former officer with the New Orleans Police Department, formed and incorporated ORSI, a private security consulting firm in 1980.
[2] Schindler filed a civil suit for damages against Young and her insurer, State Farm Mutual Automobile Insurance Company, on April 21, 1998. Because Young and State Farm are alleged tortfeasors who are solidarity bound to some extent with ORSI, the employer, the timely filed suit against the tortfeasors interrupted prescription as to the subsequent claim against ORSI for workers' compensation benefits as long as the suit was still pending. See Williams v. Sewerage & Water Board of New Orleans, 611 So.2d 1383 (La.1993).
[3] The Louisiana Supreme Court granted writs in XXXX-XXXX (La.5/26/00), 762 So.2d 626 and XXXX-XXXX (La.5/26/00), 762 So.2d 627. on a joint motion of the parties, the court dismissed both writ applications on October 10, 2000.