854 So.2d 416 (2003)
Narvey DANIELS
v.
KELLER SUPPLY, INC.
No. 2002-CA-2767.
Court of Appeal of Louisiana, Fourth Circuit.
August 6, 2003.
*418 James Maher, III, New Orleans, LA, for Plaintiff/Appellant, Narvey Daniels.
Kevin A. Marks, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, LA, for Defendant/Appellant, Keller Supply, Inc.
(Court Composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The plaintiff/claimant, Narvey Daniels, and the defendant, Keller Supply, Inc. ("Keller Supply"), appeal a judgment of the Office of Workers' Compensation awarding Daniels medical benefits, penalties, and attorney fees.

FACTUAL AND PROCEDURAL HISTORY
On Thursday morning, October 5, 2000, Daniels, a truck driver, was involved in an accident while in the course and scope of his employment with Keller Supply. At the time, Daniels was driving a delivery truck loaded with plumbing supplies on Veterans Boulevard when a section of the road suddenly collapsed, causing the truck's rear axle to fall into the sinkhole that resulted as the ground beneath gave way. Daniels reported no injuries at that time and completed his delivery route that day in another vehicle. The following day he returned to Keller Supply and worked a full duty shift.
On Saturday, October 7, 2000, Daniels went to the emergency room at Memorial Medical Center, complaining of neck pain. A physician examined Daniels, x-rayed his neck, prescribed medication, and sent him home to rest.
On Monday, October 9, 2000, Daniels notified Johnnie Lowell Thomas, his supervisor at Keller Supply, that he was experiencing pain and could not work. Mr. Thomas scheduled an appointment for Daniels to see the company doctor, Robert Segura, M.D. The next day Dr. Segura was unavailable so Paul Naccari, M.D., Dr. Segura's associate, examined Daniels and diagnosed his injury as cervical and lumbar sacral muscular strain. Dr. Naccari restricted Daniels to light duty work, which included no driving and no lifting more than twenty pounds. He also requested that Daniels return for a follow-up examination in one week. Although Keller Supply had light duty work available, Daniels did not return to work until October 25, 2000, more than two weeks later.
In the meantime, Daniels returned for follow-up examinations by Dr. Segura on October 18 and 24 and November 1 and 16, 2000. Dr. Segura found no objective signs of injury and opined that based on his subjective complaints Daniels was suffering from cervical strain. As per Dr. Segura's recommendation, Daniels applied heat to his neck and back, did stretching exercises, and gradually increased his daily activities. At the November 16th visit, Dr. Segura found Daniels' condition had improved and released him to return to full duty work.
On December 26, 2000, Daniels returned to Dr. Segura, complaining of occasional soreness and discomfort. Upon examination, Dr. Segura found no objective signs of injury but suggested that Daniels obtain *419 a second opinion from Chad W. Millet, M.D., another orthopedist.
Dr. Millet examined Daniels on January 9, 2001, and diagnosed his complaints as mild cervical and lumbar strain. He found no objective injuries to the wrists, hands, arms or shoulders at that time. Dr. Millet opined that Daniels was doing quite well and could continue to work full duty with no restrictions.
Still experiencing neck, shoulder, back and arm pain, Daniels elected to see another orthopedist, S. Daniel Seltzer, M.D., on February 7, 2001. Upon examination, Dr. Seltzer noted that Daniels had neck tenderness and lower back and arm pain. Based on these findings, Dr. Seltzer recommended that Daniels undergo both an electromyogram ("EMG") and a magnetic resonance image ("MRI"). On March 8, 2001, Daniels underwent an MRI. Based on Daniels' subjective complaints and the diagnostic test results, Dr. Seltzer concluded that he had prior narrowing of the cervical spine (stenosis) and degenerative disc disease and, as a result of the accident, sustained additional disc herniations. Daniels later underwent an EMG and a nerve conduction study, which Dr. Seltzer opined disclosed midcervical radiculopathy (diseased roots of the mid cervical spinal nerves) and carpel tunnel syndrome in both wrists. Between March 1, 2001 and March 22, 2002, Dr. Seltzer treated Daniels on fourteen occasions.
Daniels returned to full duty work at Keller Supply in November 2000 and worked the next ten months without complaint until he voluntarily resigned on September 21, 2001. On September 24, 2001, he went to work for Southland Plumbing, Inc. ("Southland"), Keller Supply's competitor. At the time, Daniels informed no one at Southland that he had a prior work related accident or that he was undergoing medical treatment. In November 2001, Southland received a subpoena in a lawsuit Daniels had filed against Jefferson Parish for the injuries he allegedly sustained in the October 5, 2000 accident. Southland then had Daniels examined by its company doctor, Dabney Ewing, M.D., at Concentra Medical Center on November 28, 2001. After examining Daniels and reviewing his medical records from Dr. Seltzer, Dr. Ewing concluded that Daniels was unfit to work as a delivery driver for Southland. Southland terminated Daniels the following day.
Meanwhile, on September 28, 2001, Daniels filed a disputed claim for compensation with the Office of Workers' Compensation, alleging that he sustained two herniated discs in the October 5, 2000 work related accident and, as a result, was permanently disabled. He further alleged that Keller Supply failed to authorize medical treatment and his choice of a physician. Keller Supply received notice of the disputed claim on December 20, 2001. In its answer filed on January 3, 2002, Keller Supply denied that Daniels had sustained any injury or disability in the work related accident.
At the trial on June 3, 2002, the parties stipulated that Daniels was in an accident on October 5, 2000 while in the course and scope of his employment with Keller Supply and that no medical or indemnity benefits were paid in connection with the accident. In addition to live testimony from fact and expert witnesses, Daniels' medical and employment records, the depositions of Drs. Segura and Millet, and a surveillance video were introduced into evidence.
Following the trial, the workers' compensation judge rendered judgment in favor of Daniels, awarding him all medical expenses, including mileage, as well as attorney fees in the amount of $2,500.00 and a penalty of $2,000.00. She determined that Keller Supply had failed to authorize *420 and/or pay medical benefits and did not reasonably controvert the claim nor demonstrate that nonpayment of the medical benefits resulted from conditions over which it had no control.
Daniels appeals raising three assignments of error: 1) the workers' compensation judge failed to make specific awards for past and future medical expenses; 2) failed to award him the costs of his expert witness fees; and 3) failed to award him temporary total disability benefits and/or supplemental earning benefits. Keller Supply, on the other hand, assigns as error the workers' compensation judge's award to Daniels of medical benefits and expenses as well as penalties and attorney fees.

STANDARD OF REVIEW
It is well settled that factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/2/97), 704 So.2d 1161, 1164; Banks v. Industrial Roofing & Sheet Metal Works, 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying the manifest errorclearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Seal, 97-0688 at p. 4, 704 So.2d at 1164. Where two permissible views of the evidence exist, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. Id. If the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, 96-2840 at p. 8, 696 So.2d at 556.

APPLICABLE LAW AND DISCUSSION

Indemnity Benefits
At the outset, we address the issue of whether Daniels is entitled to temporary total disability and/or supplemental earning benefits. Daniels contends that the workers' compensation judge correctly determined that he was injured in the work-related accident but erred in not awarding him temporary total disability and/or supplemental earnings benefits. Daniels relies on Dr. Seltzer's opinion that he suffered a 20 to 25 percent whole body impairment due to the condition of his cervical spine and a 5 to 15 percent impairment of the right upper extremity due to carpal tunnel syndrome following the accident. Keller Supply counters that any injury Daniels may have sustained in the accident neither rendered him temporarily disabled nor entitled him to supplemental earnings benefits as evidenced by the medical evidence that he could return to light duty work and that he did, in fact, return to full duty work shortly after the accident.
To establish entitlement to workers' compensation benefits, a claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment; the accident caused his injuries; and the injury caused his disability. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La. 1979). For an employee to establish entitlement to temporary total disability benefits, he must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment, regardless of its nature, and including employment while working in pain. La. R.S. 23:1221(1)(c). Coats v. American Telephone and Telegraph Co., 95-2670, p. 8 (La.10/25/96), 681 So.2d 1243, 1247. The burden of proving the existence of a fact by clear and convincing *421 evidence requires that its existence be highly probable, that is, much more probable than its non-existence. Scherer v. Interior Plant Design, 98-702, pp. 4-5 (La.App. 3 Cir 10/28/98), 724 So.2d 797, 800.
The purpose of supplemental earnings benefits is to compensate an injured employee for the wage earning capacity he has lost as a result of his accident. Banks, 96-2840 at p. 8, 696 So.2d at 556. Pursuant to the provisions of La. R.S. 23:1221(3)(a), an employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Seal, 97-0688 at p. 8, 704 So.2d at 1166. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for supplemental earnings benefits or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Daigle, 545 So.2d at 1009.
The evidence in the record indicates that Dr. Naccari found no objective signs of injury but determined that Daniels had sustained cervical and lumbar sacral muscular pain as a result of the accident. Dr. Naccari released him to return to light duty work immediately after the accident. Mr. Thomas, Daniels' supervisor, testified that Keller Supply had light duty work available at that time, but Daniels did not return to work. Although Daniels testified that he failed to return to work because he thought light duty work was unavailable, he acknowledged that he never contacted Mr. Thomas to ascertain if, in fact, it was available. Daniels eventually returned to work on October 25, 2000, at which time Keller Supply placed him on light duty.
After examining Daniels on November 16, 2000, Dr. Segura released him to return to full duty work. Shortly thereafter, Dr. Millet, too, determined that Daniels could work full duty with no restrictions. It is undisputed that Daniels returned to full duty work in November 2000 and performed regular duties at Keller Supply for the following nine months, including delivering plumbing supplies, moving and lifting toilets, tubs, showers and water heaters. The evidence also indicates Daniels worked full duty while being treated by Dr. Seltzer from February 7, 2001 until November 29, 2001, when Southland, his new employer, terminated him.
The workers' compensation judge determined that Daniels sustained an injury in the October 5, 2000 accident but was not entitled to temporary total disability benefits or supplemental earnings benefits because the medical evidence introduced at trial did not place him in "a no work status" and Keller Supply had light duty work available. After considering the evidence in the record, we find Daniels did not prove by a preponderance of the evidence that he was physically unable to engage in any employment or that the injury resulted in his inability to earn ninety percent (90%) of his average pre-injury *422 wage. Although the evidence reflects that Daniels made less money working at Southland than at Keller Supply, he acknowledged that he chose to take a decrease in pay because the Southland position provided an opportunity for advancement. Thus, the workers' compensation judge did not err in finding that Daniels was entitled to neither temporary total disability benefits nor supplemental earnings benefits.

Medical Expenses
We now address the issues of whether the trial court erred in awarding Daniels all medical expenses and whether the award included future medical expenses.
An employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. La. R.S. 23:1203 A. The right to reimbursement for medical expenses is separate and distinct from the right to compensation. Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 9 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, 19. Whether a claimant is entitled to medical benefits is a question of fact, and the fact finder's resolution of that issue may not be disturbed on appeal in the absence of manifest error or unless clearly wrong. Id.
To recover medical expenses under La. R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Montana v. City of New Orleans, 95-1701, p. 9 (La. App. 4 Cir. 6/5/96), 682 So.2d 239, 245, writ denied 96-2981 (La.1/31/97), 687 So.2d 412. An injured employee is not entitled to recover for medical expenses where he or she fails to substantiate a claim. Starks v. Universal Life Insurance Company, 95-1003, p. 5 (La.App. 1 Cir. 12/15/95), 666 So.2d 387, 391, writ denied 96-0113 (La.3/8/96), 669 So.2d 400. Nonetheless, when a claimant alleges that he incurred medical expenses and a bill supports that allegation, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment. See Augustus v. St. Mary Parish School Board, 95-2498, p. 15 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1155.
At trial, Daniels argued that he was injured in the work accident but obtained no relief from the care provided by Keller Supply's company physicians, Drs. Naccari and Segura, or from Dr. Millet, to whom he had been referred by Dr. Segura. Thus, Daniels argued that pursuant to La. R.S. 23:1121 B he was entitled to seek treatment from Dr. Seltzer, his choice of a treating physician, and to be reimbursed for all medical expenses related to Dr. Seltzer's treatment. Additionally, he argued that Keller Supply should reimburse him for the expense incurred from his visit to the Memorial Medical Center emergency room on October 7, 2000. In support of his claim Daniels introduced bills and invoices in the amounts of $285.00 for the cost of the emergency room visit at Memorial Medical Center; $1,025.00 for the cost of the MRI at Crescent City MRI; $1,276.00 for an EMG performed at Advanced Neurodiagnostic Services; and $1,564.00 for Dr. Seltzer's office visits.
On appeal, Keller Supply does not dispute that Daniels had the right to select a treating physician pursuant to La. R.S. 23:1121 B. Rather, it contends that medical expenses are not warranted because Daniels did not prove that the treatment was necessary and related to the accident. Alternatively, Keller argues that, in the event we find no error in the workers' compensation judge's determination that Daniels was entitled to medical expenses, *423 then its liability for the expenses should be limited to $750.00, pursuant to La. R.S. 23:1142 B.
La. R.S. 23:1142 provides, in part:
B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
* * *
E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
Under the exception set forth in La. R.S. 23:1142 E, when an employer or insurer has denied that a claimant's injury is compensable, the statutory cap does not apply. See Bolton v. Tulane University, 99-0970, p. 9 (La.App. 4 Cir. 3/1/00), 755 So.2d 1003, 1009[1].
Daniels testified at trial that although he returned to work full duty in November 2000, he continued to experience pain as a result of the accident. Because he failed to obtain any relief from Drs. Naccari, Segura or Millet, on his attorney's suggestion, he began seeing Dr. Seltzer in February 2001. While under Dr. Seltzer's care, Daniels underwent a MRI on March 8, 2001, and an EMG on June 26, 2001. At no time did he notify Keller Supply that Dr. Seltzer was treating him or seek its consent prior to undergoing the diagnostic tests. The record reflects that Daniels filed his disputed claim for compensation on September 28, 2001, one week after he voluntarily resigned from Keller Supply. Keller Supply received notice of the disputed claim on December 20, 2001, and filed its answer denying that Daniel's claim was compensable on January 3, 2002.
Daniels had the right to select one treating physician regardless of whether or not he was satisfied with the treatment obtained by his employer's physicians. See Smith v. Southern Holding, Inc., XXXX-XXXX, p. 1 (La.1/28/03), 839 So.2d 5. Thus, Daniels had the right to seek treatment from Dr. Seltzer. Nonetheless, because Keller Supply did not deny that Daniels' injury was compensable under La. R.S. 23:1021 et seq. until January 3, 2002, prior to that date, Dr. Seltzer, the healthcare provider, could incur no more than a total of $750.00 in nonemergency diagnostic testing or treatment without the mutual consent of Keller Supply and Daniels. After that date, however, Daniels was not required to obtain consent from his employer for treatment or diagnostic testing by Dr. Seltzer. Thus, in view of the workers' compensation judge's finding that Daniels sustained an injury in the accident, which we decline to disturb, she correctly determined that Daniels was entitled to medical expenses incurred as a result of his treatment by Dr. Seltzer. The expenses *424 incurred prior to January 3, 2002, are limited to $750.00 pursuant to La. R.S. 23:1142 B. As to the expenses after January 3, 2002, the evidence in the record reflects that Dr. Seltzer treated Daniels on January 18, February 15, and March 22, 2002; the costs of these three office visits totaled $241.00.
Furthermore, Keller Supply did not dispute that Daniels went to the emergency room within forty-eight hours of the accident with complaints of neck pain, and was treated and prescribed medication. Thus, the introduction of the Memorial Medical Center bills into evidence at trial was sufficient to support the inclusion of the $285.00 emergency room expense in the judgment.

Future Medical Expenses
As to whether the workers' compensation judge's award of "all MEDICAL BILLS AND EXPENSES" should include future medical expenses, as claimed by Daniels, a preponderance of the evidence in the record does not support a finding that he is entitled to any future medical expenses. Dr. Seltzer testified that as a result of the accident Daniels developed carpal tunnel syndrome that would require surgery on both wrists at a total cost of $6, 970.00. Likewise, he opined that after reviewing the MRI results, Daniels sustained herniated cervical discs that would likely require future surgery. Notwithstanding his testimony, the other evidence in the record overwhelmingly supports the finding that future surgery is not warranted. Drs. Segura and Millet, both expert orthopedists, opined that as of January 9, 2001, Daniels had reached maximum medical improvement, could work full duty, and was in need of no further care. Daniels, himself, testified that he returned to full duty work in November 2000, worked for ten more months, and never complained to his supervisor that he was unable to work. When he went to work for Southland in September 2001, he worked full duty. Michael Marque, Daniels' supervisor at Southland, testified that Daniels never complained of pain or appeared to be in any pain while working. Keller Supply also introduced into evidence a surveillance video taken on January 11, 12 and 15, 2001, which shows Daniels jumping in and out of the delivery truck, hanging from an overhead bar, lifting and moving tubs, showers, hot water heaters, pipes, and other heavy equipment. Collectively, the evidence clearly contradicts Dr. Seltzer's opinion that Daniels' accident-related injuries are disabling and will require surgery.

Penalties and Attorney Fees
We next address whether the workers' compensation judge erred in awarding Daniels penalties and attorney fees.
A workers' compensation judge's award of penalties and attorney fees under La. R.S. 23:1201 is a factual determination and should not be disturbed on appeal unless clearly wrong. Fortenberry v. Bard, 2001-2195, p. 13 (La.App. 4 Cir. 10/16/02), 830 So.2d 1025, 1034, writ denied 2002-2797, 2002-2877 (La.2/14/03), 836 So.2d 119, 120.
La. R.S. 23:1201 E provides that medical benefits shall be paid within sixty days after the employer or insurer receives written notice thereof. Furthermore, the penalty provision, La. R.S. 23:1201 F, provides, in part:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed *425 claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
* * *
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
La. R.S. 23:1201 F is penal in nature and, therefore, must be strictly construed. See Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. An award of attorney fees in a workers' compensation case is intended to discourage indifference and undesirable conduct by employers and insurers. Id. The burden of proving entitlement to a penalty is on the claimant. Fortenberry, 2001-2195 at p. 14, 830 So.2d at 1035.
In the instant case, the workers' compensation judge assessed a penalty of $2,000.00 and awarded $2,500.00 in attorney fees, stating in her judgment that:
Defendant EMPLOYER and Insurer DID Fail to Authorize and/or Pay Medical Benefits pursuant to La. R.S. 23:1201 E; and Defendant Employer DID NOT "Reasonably Controvert" the Claim NOR did it "occur due to conditions over which defendant had no control" under La. R.S. 23:1201 F.
After reviewing the evidence in the record, we find the trial court erred in assessing a $2,000.00 penalty against Keller Supply and awarding Daniels attorney fees of $2,500.00. Although Daniels testified that he presented the emergency room bill to his supervisor at Keller Supply for payment, which Mr. Thomas denied, he put forth no evidence to prove that Keller Supply ever received written notice pursuant to La. R.S. 23:1201 E that the emergency room expenses or any other medical benefits were due. Daniels acknowledged that he neither notified his employer that Dr. Seltzer was treating him nor requested that it pay for his services. Dr. Seltzer, too, testified that he demanded no medical payments from Keller Supply. Also, Daniels admitted that no one at Keller Supply ever told him that orthopedic treatment and/or diagnostic testing would not be approved. In view of the evidence, the workers' compensation judge clearly erred in determining that Keller Supply failed to authorize and/or pay medical benefits.

Costs
Finally, we address whether the workers' compensation judge abused her discretion in assessing to each party their respective costs. Daniels contends that because Keller Supply has been cast in judgment it should reimburse him for Dr. Seltzer's expert witness fees. We disagree.
A workers' compensation judge's assessment of costs may be reversed on appeal only upon a showing of an abuse of discretion. Bourgeois v. Heritage Manor of Houma, 96-0135, p. 5 (La.App. 1 Cir. 2/14/97), 691 So.2d 703, 707. Regarding costs, La. R.S. 23:1317 B provides, in pertinent part:
Costs may be awarded by the workers' compensation judge, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings. The fees of expert witnesses shall be reasonable and shall not be allowed unless fixed in the judgment.
Furthermore, La. R.S. 23:1310.9 provides:
If the workers' compensation judge before which any proceedings for compensation or concerning an award of compensation have been brought, under the Workers' Compensation Act, determines *426 that such proceedings have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground, the workers' compensation judge shall assess the total cost of the proceedings to the party who has brought them or the party who was unreasonably denied payment of benefits.
Also, La. C.C.P. art.1920 states that costs shall be paid by the party cast "[u]nless the judgment provides otherwise."
In the instant case, the Office of Workers' Compensation judgment expressly provided that "ALL Costs of these proceeding [sic], including all depositions introduced into evidence, if any, ARE ASSESSED with Each Party to Bear Its Own Costs." Clearly, the workers' compensation judge, at her discretion, chose not to award Daniels the costs of Dr. Seltzer's expert fees. Although she determined that Keller Supply wrongfully denied medical benefits and failed to reasonably controvert Daniels' claim, which would have warranted an assessment of costs against it pursuant to La. R.S. 23:1310.9, we have concluded that those findings are not supported by the record. Keller Supply has appealed successfully, but unlike Daniels, it did not appeal the issue of costs. Thus, we decline to disturb the workers' compensation judge's assessment of costs in this matter.

CONCLUSION
Accordingly, for the reasons stated herein, the judgment of the workers' compensation judge is reversed, in part, insofar as it awarded Daniels penalties and attorney fees. The judgment is amended, in part, to award Daniels the following medical expenses: $285.00 (the Memorial Medical Center emergency room costs); $750.00 (the medical expenses incurred for diagnostic testing and treatment by Dr. Seltzer prior to January 3, 2003); and $241.00 (the costs of Dr. Seltzer's three office visits after January 3, 2003). In all other respects, the judgment is affirmed.
REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART.
NOTES
[1] The Louisiana Supreme Court granted writs in XXXX-XXXX (La.5/26/00), 762 So.2d 626 and XXXX-XXXX (La.5/26/00), 762 So.2d 627. However, on a joint motion of the parties, the Supreme Court dismissed both writ applications on October 10, 2000.