MICHAEL E. KIRBY, Judge.
| ¶ This case involves a workers’ compensation claim filed by Lloyd V. Gioe against his employer, The Albach Company, Inc., and his employer’s insurer, The Gray Insurance Company. Claimant and defendants appeal the judgment of the Office of Workers’ Compensation ordering defendants to pay for claimant’s initial two days of hospitalization and testing performed during that period, and assessing penalties and attorney’s fees against defendants for failure to pay for the initial two days of hospitalization and testing.
On August 21, 2003, claimant was injured in an accident while in the course and scope of his employment as a fitter’s helper at The Albach Company in Chal-mette, Louisiana. Claimant was operating a device called a come-along, which is used to lift objects or pull objects together. The come-along jammed, and when claimant attempted to fix it, the metal handle released and struck claimant on the bridge of his nose. The fact that this accident occurred as described by claimant is not disputed. The main dispute in this case is whether or not the injuries claimant sustained in the accident resulted in a work-related disability. | ¡^Specifically, the primary issue is whether or not the accident caused acute seizures resulting from head trauma.
All parties agree that claimant sustained a laceration to his nose as a result of the accident. On the day of the accident, claimant was taken to the emergency room at Chahnette Medical Center. The medical records show that claimant underwent a CT scan that did not show any active bleeding, but claimant was admitted to the hospital for head trauma with concussion and multiple syncopal episodes (swooning or fainting) and in order to rule out seizures. Claimant remained at Chalmette Medical Center until September 4, 2003 when he was transferred to West Jefferson Medical Center, where he remained until September 9, 2003. While hospital *613 ized, claimant underwent numerous diagnostic procedures, including CT scans, MRI (magnetic resonance imaging) studies and electroencephalogram (EEG) monitoring.
On the day of the accident, Dr. Salvador Murra, a neurologist, examined claimant at Chalmette Medical Center, and the medical records show that his impression was that claimant suffered head trauma with early posttraumatic seizures (complex partial seizures.) This diagnosis was based on an episode of continuous blinking during the examination. Dr. Murra admitted claimant to the Intensive Care Unit for observation and recommended that claimant undergo EEG testing. An EEG conducted the day after the accident, August 22, 2003, was normal, showing no epileptic or true seizure activity.
13Claimant was examined on August 24, 2003 by another neurologist, Dr. Michael Happel. Dr. Happel stated in his deposition that during his evaluation of claimant, he thought claimant had a complex partial seizure where he became unresponsive and his pupils dilated visibly and remained in that state for approximately two to three minutes. However, he noted that claimant was not undergoing EEG monitoring at the time. He explained that a complex partial seizure is much milder than a generalized seizure as seen in cases of epilepsy. Dr. Happel’s opinion was that other than the one complex partial seizure that he believed claimant experienced during the August 24, 2003 evaluation, the other seizure-like episodes exhibited by claimant during his hospitalization as described by family members and nursing staff were pseudoseizures rather than true epileptic seizures.
Dr. Happel recommended that claimant undergo a psychological evaluation. Claimant was prescribed anticonvulsant medication and was monitored for seizure activity during his hospitalization. Because claimant did not experience any seizures or seizure-like activity prior to the accident, Dr. Happel’s opinion is that the seizure activity was the result of the head trauma suffered in the accident. Dr. Hap-pel has continued to treat claimant since his release from the hospital, and stated in his deposition taken in June 2004 that he was hopeful that claimant would be able to return to his former employment by the end of 2004. At the time of trial in September 2004, Dr. Happel had not authorized claimant to return to work.
l4Pr. Michael Puente, a neurologist, testified by deposition that he examined claimant on September 4, 2003 while he was hospitalized at West Jefferson Medical Center. Claimant appeared sedated from medications he was taking. While observing claimant in the hospital, Dr. Puente remembered witnessing spells that appeared to be pseudoseizures, but he could not recall the exact details. He explained that pseudoseizures look like seizures, but are not; rather, they are based on underlying psychiatric factors. He recommended that claimant undergo a psychiatric evaluation. He did not observe any true seizure activity in the time he was involved in claimant’s treatment. He said he could not rule out brain damage from the way claimant’s accident was described to him.
Trial in this matter included testimony from two experts in the field of psychiatry, Dr. John MacGregor and Dr. Maria Carmen Palazzo. Dr.- MacGregor evaluated claimant four times in November 2003. He found that claimant showed no signs of brain injury. He diagnosed claimant as suffering from major depressive disorder. Dr. MacGregor stated that claimant disclosed that he had daily suicidal ideation, and thought of shooting himself in the head. Dr. MacGregor assumed claimant *614 had immediate access to guns because he said he was a hunter. However, claimant assured Dr. MacGregor that he would not carry out this plan for the sake of his family. Dr. MacGregor admitted that he did not order that claimant be committed to a psychiatric facility or advise claimant to commit himself. Dr. MacGregor related claimant’s depression to the accident and | ¿resulting injuries, because claimant became depressed over restrictions placed on his ability to work and drive, among other things.
Dr. Palazzo was also accepted by the trial court as an expert in the field of neuroanatomy, in addition to being accepted as an expert in psychiatry. She explained that the field of neuroanatomy addresses effects of brain injuries from an anatomical standpoint. Dr. Palazzo stated that the description of the seizure-like episodes experienced by claimant during his hospitalization and the calming effect of sedation medications given to claimant after these episodes indicated to her that claimant was suffering from anxiety rather than true seizures. The medical records showed that claimant’s seizure-like activity stopped when Dr. Frank Culicchia, a neurologist who treated claimant at West Jefferson Medical Center, told him that these spells were anxiety reactions. Dr. Palazzo said that was very characteristic of pseu-doseizures.
Dr. Palazzo testified that the EEGs and CT scans in claimant’s medical records showed no evidence of any closed-head injury. She stated that the type of injury sustained by claimant would not result in a trauma-induced seizure because being struck in the part of the nose where claimant was struck would not cause trauma to the brain. Her opinion is that claimant’s seizures were pseudoseizures rather than true seizures, and she suspected that they were related to a traumatic childhood in which he was severely neglected and abused. Dr. Palazzo’s assessment of claimant was that the pseudoseizures were brought about by a conversion reaction or hysteria, which caused claimant to unconsciously feign |fiseizures and other symptoms in order to gain attention. She distinguished this behavior from a malingerer who consciously lies about his symptoms. She said patients with a conversion disorder must be confronted about it because they are not conscious of the fact that they are feigning physical symptoms that are not truly present.
Dr. Palazzo stated her opinion that claimant should have been discharged from the hospital and weaned off of the Tegretol anti-seizure medication as soon as it became apparent that his seizure-like activity was the result of pseudoseizures rather than true seizures. She said that it was appropriate for claimant’s employer to take him to the hospital immediately after his accident, because he was experiencing nausea and vomiting. However, when the EEG was normal the day after claimant was hospitalized, Dr. Palazzo’s opinion was that the medical staff at Chalmette Medical Center should have properly diagnosed claimant as experiencing pseudoseizures rather than true seizures and discharged him that day.
On appeal, the claimant argues that the Workers’ Compensation Judge (‘WCJ”) erred in holding that claimant’s work-related injury did not result in any disability. Claimant also contends that the WCJ erred in not finding that all of claimant’s hospitalizations and medical treatment following the accident were necessary and reasonable as a result of his injuries. Claimant further argues that the WCJ erred in not awarding him temporary total disability benefits from the date of the accident to the date of trial.
*615 |7As stated above, it is undisputed that claimant suffered injuries in the course and scope of his employment on August 21, 2003. However, conflicting expert medical testimony was presented on the issue of whether or not these injuries resulted in a work-related disability. Specifically, the disputed issue is whether the claimant experienced any true seizures following the August 21, 2003 accident, or whether the episodes of seizure-like activity exhibited by claimant were psychological in nature, or pseudoseizures.
In the judgment, the WCJ stated his finding that claimant was not an entirely credible witness and portions of his testimony were not plausible. Even so, the WCJ concluded that a portion of claimant’s claim has merit. The WCJ found that the claimant’s work-related injury did not result in any work-related disability, and that most of claimant’s hospitalization and medical treatment was a result of a preexisting medical condition. The WCJ did find that the first two days of claimant’s hospitalization at Chalmette Medical Center and the diagnostic testing performed during that time period were related to the accident, and the defendants were ordered to pay those costs. However, the WCJ also found that the results of those diagnostic tests provided the employer’s insurer a reasonable basis upon which to controvert the balance of the claim. The WCJ assessed penalties against the defendants for failure to pay for the initial two days of hospitalization and testing, and also awarded attorney fees to claimant’s counsel.
The claimant in a workers’ compensation suit has the burden of proving by a preponderance of the evidence that there is a work-related disability. Donahoe v. Jefferson Council on Aging, Inc., 2004-0178, (La.App. 5 Cir. 10/26/04), 887 So.2d 549. On this issue, it is obvious that the WCJ accepted the opinion of Dr. Pa-lazzo that claimant’s seizure-like activity was entirely psychological in nature and not related to injuries suffered in the accident, and that the injuries did not result in any work-related disability. In doing so, the WCJ obviously rejected the opinions of other medical experts that claimant experienced at least one true complex partial seizure, that this was the result of head trauma suffered in the accident and that this injury resulted in a work-related disability. Furthermore, the WCJ stated that the claimant was not an entirely credible witness.
Dr. Palazzo’s opinion was bolstered by evidence that none of the many EEG’s performed during claimant’s lengthy hospitalization showed any sign of true seizure activity, and all seizure-like activity ceased when claimant was informed that this activity was caused by anxiety. Given the WCJ’s opportunity to hear the witnesses and evaluate their testimony and credibility, we cannot say that the decision to credit the testimony of Dr. Palazzo over that of the other witnesses on the issue of whether claimant suffered a work-related disability was manifestly erroneous. Because we find no manifest error in the finding that claimant did not suffer a work-related disability, we also find no merit in claimant’s argument that the WCJ should have awarded him temporary total disability benefits from the date of the accident to the date of trial plus penalties and attorney fees.
Furthermore, the WCJ did not err in limiting the defendants’ responsibility for claimant’s medical care to the first two days of hospitalization at Chalmette | flMedical Center and diagnostic testing conducted during that period and in finding that the results of those tests provided a reasonable basis upon which the defendants could controvert the balance of the *616 claim. To recover medical expenses under La. R.S. 28:1203, a claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by a work injury. Daniels v. Keller Supply, Inc., 2002-2767, p. 9, (La.App. 4 Cir. 8/6/03), 854 So.2d 416, 422.
An EEG performed on claimant on his second day of hospitalization at Chalmette Medical Center revealed no sign of true seizure activity. Despite this test result, the medical staff at Chalmette Medical Center treated claimant with anti-convul-sant medication and held claimant for observation from August 21, 2003 until September 4, 2003 when his family transferred him to West Jefferson Medical Center. Dr. Palazzo testified that the Chalmette Medical Center staff should have recognized from the normal EEG results on the second day of hospitalization that claimant was experiencing pseudoseizures rather than true seizures. Although Dr. Palazzo also stated in another part of her testimony that three or four days of claimant’s hospitalization at West Jefferson Medical Center may have been appropriate, her testimony that tests performed on the second day of claimant’s stay at Chalmette Medical Center ruled out a true seizure condition provided the WCJ with a sufficient basis to rule that claimant’s subsequent treatment after his first two days at Chalmette Medical Center was not- reasonably |1nnecessary to treat a work-related injury. We find no manifest error in that conclusion.
Claimant’s appeal brief also includes several assignments of error related to Dr. MacGregor’s fees for his treatment of claimant and deposition fees. Dr. John MacGregor filed an intervention in the Office of Workers’ Compensation, claiming he was entitled to payment by defendants for the psychiatric evaluation he performed on claimant. In this intervention, Dr. MacGregor also claimed that he was entitled -to payment by defendants for- his deposition fee. The record shows that neither claimant nor any healthcare provider sought or obtained prior approval from the employer’s insurer for claimant to receive treatment from Dr. MacGregor. Dr. MacGregor claimed in his intervention that his treatment of claimant should be considered emergency care, which requires no prior approval from the employer’s insurer.
The judgment in this case did not include any award for Dr. MacGregor’s fees. In fact, the judgment is silent as to Dr. MacGregor’s intervention. Although claimant’s brief raises arguments regarding Dr. MacGregor’s claim for fees, the record does not show that Dr. MacGregor appealed or answered defendants’ appeal in this case. Therefore, the arguments relating to claims made in Dr. MacGregor’s intervention are not properly before this Court and will not be considered. See La. C.C.P. article 2133; see also Tabeo Exploration, Inc. v. Tadlock Pipe & Equipment, Inc., 617 So.2d 606 (La.App. 3 Cir.1993), Rachal v. Texas & P. Ry. Co., 61 So.2d 525 (La.App. 2 Cir.1952).
In Defendants also appealed, arguing that the WCJ erred in ordering them to pay claimant $2,000.00 in penalties and $4,000.00 in attorney fees. In claimant’s appeal brief, he argues that the amount of penalties and attorney fees awarded was insufficient and should be increased. The WCJ assessed penalties and attorney fees against defendants based on their failure to pay for claimant’s initial two days of hospitalization at Chalmette Medical Center and the diagnostic testing performed during that time. The WCJ found that the defendants had a reasonable basis to controvert the balance of the claim.
*617 Defendants argue that the award of penalties and attorney fees was erroneous because they did not receive adequate notice of the claimant’s medical expenses for treatment at Chalmette Medical Center. The record shows that claimant’s attorney sent the employer’s insurer a demand letter dated October 2, 2003. In this letter, claimant’s counsel asked the insurer to pay claimant’s medical expenses, and noted that claimant was taken to Chalmette Medical Center after the accident and remained hospitalized there for 13 days, and was then transferred to West Jefferson Medical Center where he was hospitalized from September 4, 2003 through September 9, 2003.
Counsel stated in the letter that claimant’s medical expenses for his stay at West Jefferson Medical Center totaled $11,713.00, but did not set forth the costs of claimant’s medical expenses for his stay at Chalmette Medical Center. Counsel further stated in the letter that claimant was required to use his health insurance provided by his employer for his expenses, and noted that he was attaching copies 112of invoices for claimant’s medical expenses and statements from claimant’s healthcare insurer to the letter. Defendants argue that contrary to claimant’s counsel’s statement in the letter, the invoices and statements regarding claimant’s medical expenses were not attached to the October 2, 2003 letter.
La. R.S. 23:1201(E) provides that medical benefits payable under the Workers’ Compensation Act “shall be paid within sixty days after the employer or insurer receives written notice thereof.” La. R.S. 23:1201(F) provides for an award of penalties and attorney fees for failure to provide payment in accordance with La. R.S. 23:1201. The record shows that the October 2, 2003 demand letter is the only notice defendants received regarding claimant’s request for payment of medical expenses. Although the letter states that invoices for medical expenses and statements from the claimant’s healthcare insurer were attached, there is no evidence in the record that any invoices or statements regarding claimant’s medical expenses were presented to the defendants.
An award of penalties and attorney fees is not appropriate when there is no evidence that the employer or its insurer received a proper breakdown of charges for a claimant’s medical treatment. Stewart v. Self-Insurer’s Bureau, 626 So.2d 34 (La.App. 1 Cir.1993); Turner v. State, Through Department of Health and Human Resources, 475 So.2d 137 (La.App. 3 Cir.1985). Because claimant did not provide defendants with adequate written notice of his medical claims, we find that the WCJ erred in holding the defendants liable for penalties and attorney fees for 118failure to pay for claimant’s initial two days of hospitalization and diagnostic testing.
For the reasons stated above, the portion of the judgment awarding claimant penalties and attorney fées is hereby reversed. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
MURRAY, J., dissents in part with reasons.